# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SAMIR HAMEL,
c/o DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, D.C. 20043

*and*

WILLIAM FISCHER,
c/o DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, D.C. 20043

       *Plaintiffs*,

      v.

U.S. DEPARTMENT OF VETERANS
AFFAIRS,
810 Vermont Avenue
Washington, DC 20420

*and*

PETER O'ROURKE,
in his capacity as the person claiming to be
the acting Secretary of Veterans Affairs,
810 Vermont Avenue
Washington, DC 20420

       *Defendants.*

Case No. 1:18-cv-1005 (RC)

## <u>AMENDED COMPLAINT</u>

1.     Plaintiffs Samir Hamel and William Fischer bring this action against Defendants the U.S. Department of Veterans Affairs (the "Department" or the "VA") and Peter O'Rourke, in his capacity as the person claiming to be the acting Secretary of Veterans Affairs, seeking a declaration that O'Rourke is not the lawful acting Secretary, and an injunction barring O'Rourke and the Department from continuing to represent that O'Rourke is the acting Secretary and from taking any action in reliance on O'Rourke's purported authority.

2.     According to press reports, the Trump administration and its allies in Congress seek to privatize essential VA services, turning veterans' health care over to a network of private providers rather than the facilities and physicians that veterans have come to count on. But this case is not about whether privatization is a good idea or a bad idea. This case is about who will make that decision and, more broadly, who possesses the authority to make the many day-to-day decisions regarding veterans' benefits and care that the Secretary of Veterans Affairs has to make. Specifically, this case is about whether President Trump may circumvent federal statutes and the Constitution to install O'Rourke as the acting Secretary of Veterans Affairs.

3.     The position falls to the Deputy Secretary, not O'Rourke, as a matter of law. The VA's statutory scheme provides that in the event of a vacancy in the Secretary position, the Deputy Secretary shall become acting Secretary. Under the Federal Vacancies Reform Act of 1998 (the "FVRA"), the President may bypass the default order of succession, but only if the previous officeholder dies, resigns, or is otherwise unable to serve in the office—not if the previous officeholder is fired. On March 28, 2018, President Trump unceremoniously fired the Secretary of Veterans Affairs, Dr. David J. Shulkin, by tweet. The President did not, therefore, have legal

authority under the FVRA to fill the vacant Secretary position with an acting officer of his choice. O'Rourke's appointment as acting Secretary was unlawful.

4.      By disregarding statutory provisions addressing when an individual may be designated to act as an officer in a Senate-confirmed position, the President has also avoided all Congressional checks on his power to fill such positions, and in so doing has violated the Appointments Clause of the Constitution.

5.      Plaintiffs are veterans who are injured by the President's unlawful appointment of O'Rourke, O'Rourke's unlawful assumption of authority, and the Department's recognition of it. They receive health care from the VA and are therefore subject to the effects of any decisions O'Rourke makes with regard to health care services or other benefits; they are subject to continued, profound uncertainty about how and under what conditions they will receive their benefits; they are deprived of the right to a lawful acting Secretary who will vigorously represent their interests before Congress and the rest of the executive branch; and they face the imminent threat that their health care will be turned over to the private sector.

6.      Thus, Plaintiffs respectfully request that the Court declare that O'Rourke is not the lawful acting Secretary of Veterans Affairs, and enjoin O'Rourke and the Department from continuing to represent that O'Rourke is the acting Secretary and from taking any action in reliance on O'Rourke's purported authority.

**Jurisdiction and Venue**

7.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the Constitution and laws of the United States.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1) because Defendants are an agency of the United States and a purported official of the agency sued in his official capacity.

**Parties**

9.      **Plaintiff Samir Hamel** lives with his wife and three children in El Mirage, Arizona. He enlisted in the United States Army Reserve shortly after the September 11th attacks. He served as an Army chaplain until January 2014, when he was honorably discharged. From December 2004 to November 2005, Mr. Hamel deployed to Kuwait, Iraq, and Qatar.

10.     Mr. Hamel applied and was enrolled in the VA health care system in 2007. He uses his health benefits on a monthly basis, visiting the Southwest Veterans Affairs Health Care Clinic in Phoenix, Arizona. Mr. Hamel is happy with the health care he has received at the VA; although he has had the option, provided by the VA, to use private service providers, he prefers to use the VA for all of his health care needs, so he can continue to see his own doctor.

11.     Mr. Hamel is concerned that the administration will take action to privatize VA health care services. He fears that VA leadership will support and encourage moving veterans like him to private service providers, disrupting his care. If Mr. Hamel could not access VA health care, he would either have to purchase health insurance on the individual market or go without coverage.

12.     Mr. Hamel received a home loan through the VA in May 2013 to purchase his current residence. He also used the VA's vocational rehabilitation and employment services to obtain his Masters in Business Administration.

13.     **Plaintiff William Fischer** lives in Washington, DC. He served in the United States Marine Corps from March 2001 until he was honorably discharged in March 2009, including a deployment to Fallujah, Iraq in 2004 where he received, among other awards, a Purple Heart.

14.     Mr. Fischer is enrolled in the VA health care system. He uses his health benefits for annual check-ups and on a periodic basis as necessary at the Washington, DC VA Medical

Center. Mr. Fischer has had a positive experience with the VA. If Mr. Fischer did not have VA health care, he would be forced to rely exclusively on private health coverage.

15.     Like Mr. Hamel, Mr. Fischer is concerned about the potential privatization of VA health care services. He fears that privatization would result in worse care for veterans as the VA is set up specifically to meet the needs of veterans and has an institutional expertise unmatched in the private sector.

16.     Mr. Fischer also received education assistance through the GI Bill and previously purchased a home using the VA home loan program.

17.     As veterans who receive health care and other benefits from the VA, Plaintiffs are injured by the President's unlawful appointment of O'Rourke, O'Rourke's unlawful assumption of authority, and the VA's acknowledgment of it. They continually receive benefits from the Department pursuant to its regulations, they must comply with the Department's requirements and policies, and any disputes regarding their benefits are resolved by the Secretary and his designees within the Department. They are therefore affected by any decisions O'Rourke makes with regard to health care services or other benefits. Beyond these present injuries, Plaintiffs face the imminent threat that their health care will be turned over to the private sector, decreasing their access to health care services and the quality of those services.

18.     Because of the dubious legality of O'Rourke's appointment as acting Secretary, Plaintiffs are subject to continued, profound uncertainty about how and under what conditions they will receive their benefits. Certainty is essential with respect to medical benefits; Plaintiffs need to know how and whether they can access VA health care services, especially given the possibility that they could suffer a medical emergency. Plaintiffs are also deprived of the right to a lawful

acting Secretary who will vigorously represent their interests before Congress and the rest of the executive branch—and one whose authority is undisputed.

19.     **Defendant Department of Veterans Affairs** is a federal agency headquartered in Washington, DC, charged with "administer[ing] the laws providing benefits and other services to veterans and the dependents and the beneficiaries of veterans." 38 U.S.C. § 301. The Department is treating Defendant O'Rourke as acting Secretary.

20.     **Defendant Peter O'Rourke** is the Chief of Staff of Veterans Affairs and purports to be the acting Secretary of Veterans Affairs. He is sued in his capacity as the person claiming to be the acting Secretary, an official who "is responsible for the proper execution and administration of all laws administered by the Department and for the control, direction, and management of the Department." 38 U.S.C. § 303.

**The Department Provides Essential Health Care Services
and Other Benefits to Veterans Nationwide**

21.     The Department is the federal agency responsible for ensuring that our collective obligations to those who defended our Nation are fulfilled. As the Supreme Court has recognized, "[t]he solicitude of Congress for veterans is of long standing." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 440 (2011) (quoting *United States v. Oregon*, 366 U.S. 643, 647 (1961)). To that end, the Department administers a complex and extensive benefits system and is charged with fulfilling certain statutory duties and requirements.

22.     Of utmost importance, the Department operates a health care system: the Veterans Health Administration ("VHA"). The VHA "provide[s] a complete medical and hospital service for the medical care and treatment of veterans." 38 U.S.C. § 7301. The VHA "is America's largest integrated health care system, providing care at 1,240 health care facilities, including 170 medical centers and 1,061 outpatient sites of care of varying complexity … , serving 9 million enrolled

Veterans each year."[1] In total, the VA health care system has "an annual budget of approximately $68 billion."[2]

23.     Plaintiffs and other veterans receive health benefits by applying to enroll in the VA system in person, by telephone, by mail, or online. Each veteran is assigned to a "priority group," which determines when he or she will be able to enroll in VA health care and the precise level of benefits they receive. "The enrollment system is based on priority groups to ensure care is available to all enrolled Veterans," consistent with Congressional budget limitations.[3]

24.     Once veterans have enrolled, they receive a personalized Veterans Health Benefits Handbook that describes their benefits. Those benefits generally include "all the necessary inpatient hospital care and outpatient services to promote, preserve, or restore your health," including "preventive care, inpatient care, ancillary services, specialty care, and mental health services."[4] The handbook informs veterans that "[a]long with your enrollment in the VA health care system comes the assurance that health and treatment services will be available when and where you need them."[5] It continues: "You can expect VA's highly qualified and dedicated health care professionals to meet your needs, regardless of the treatment program, regardless of the location."[6] In other words, the VA emphasizes the reliability and stability of VA care.

---

[1]   *Veterans Health Administration*, Dep't of Veterans Affairs, https://www.va.gov/health/ (last visited June 18, 2018).

[2]   *About VHA*, Dep't of Veterans Affairs, https://www.va.gov/health/aboutVHA.asp (last visited June 18, 2018).

[3]   *Priority Groups*, Dep't of Veterans Affairs, https://www.va.gov/HEALTHBENEFITS /resources/priority_groups.asp (last visited June 18, 2018).

[4]   *Veterans Health Benefits Handbook*, Dep't of Veterans Affairs 4, https://www.va.gov /HEALTHBENEFITS/vhbh/publications/vhbh_sample_handbook_2014.pdf (last visited June 18, 2018).

[5]   *Id.* at 1.

[6]   *Id.*

25.     What distinguishes the care provided by the VA from other forms of health coverage is that the VA generally provides health care directly to enrolled veterans, rather than by contracting with private parties, like a typical private health insurer. Veterans receive a Veteran Health Identification Card which they can use to obtain health care at any VA health facility.[7] When they see a health care provider, Plaintiffs and other veterans pay a minimal or no co-pay.[8]

26.     The VA also provides a number of other benefits to the Nation's veterans. The Veterans Benefits Administration, under the leadership of the Under Secretary for Benefits and the Secretary, is charged with "the administration of nonmedical benefits programs of the Department which provide assistance to veterans and their dependents and survivors." 38 U.S.C. § 7701. Among other things, the VA provides disability compensation and a pension for disabled veterans (*id.* §§ 1110, 1131, 1521); life insurance payments (*id.* § 1312); housing assistance for homeless veterans (*id.* § 2011); compensation for burial expenses and designated national cemeteries (*id.* §§ 2302, 2402); educational assistance, commonly referred to as the GI Bill (*id.* § 3461); housing and small business loans (*id.* §§ 3702, 3742); and vocational rehabilitation and training (*id.* § 4102).

### The Secretary Is Responsible for Ensuring Veterans Get the Health Benefits to Which They Are Entitled

27.     While the Secretary may delegate certain duties to his or her subordinates, it is the Secretary who is ultimately responsible for administering the VA system, for making critical decisions about veterans' benefits, and for advocating on behalf of veterans to other executive branch agencies and officials, to Congress, and to the public at large. Ultimately, the Secretary is

---

[7]     *Id.* at 26.

[8]     *Determine Cost of Care*, Dep't of Veterans Affairs, https://www.va.gov /HEALTHBENEFITS/cost/index.asp (last visited June 18, 2018).

charged with achieving "the maximum feasible effectiveness, coordination, and interrelationship of services among all programs and activities affecting veterans," and "shall actively promote the effective implementation, enforcement, and application of all provisions." *Id.* § 523(a).

28.     With respect to health coverage, the Secretary is obligated to "furnish hospital and medical services which the Secretary determines to be needed … to any veteran for a service-connected disability; and … to any veteran who has a service-connected disability rated at 50 percent or more," and may also furnish nursing home care to certain veterans. *Id.* § 1710(a). To that end, the Secretary must "establish and operate a system of annual patient enrollment," which "manage[s] the enrollment of veterans," as described above. *Id.* § 1705(a).

29.     The Secretary is charged with ensuring that the VHA adequately serves the veterans under its care. He or she must "to the extent feasible, design, establish and manage health care programs in such a manner as to promote cost-effective delivery of health care services in the most clinically appropriate setting." *Id.* § 1706(a). And he or she must "establish and conduct a comprehensive program to monitor and evaluate the quality of health care furnished by the Veterans Health Administration." *Id.* § 7311. VA regulations provide that "[p]atients have a right to be treated with dignity in a humane environment," and "have a right to receive, to the extent of eligibility therefor under the law, prompt and appropriate treatment for any physical or emotional disability." 38 C.F.R. § 17.33(a).

30.     The Secretary also possesses substantial discretion to extend health care services to those who are not otherwise statutorily entitled to them. For categories of veterans not enumerated in the statute, "the Secretary may, to the extent resources and facilities are available, … furnish hospital care, medical services, and nursing home care which the Secretary determines to be needed." 38 U.S.C. § 1710(a)(3). The Secretary can also provide medical care to the survivors and

dependents of certain veterans. *Id.* § 1781(a). And the Secretary may provide benefits where an "administrative error" results in non-payment (*id.* § 503(a)), or where a beneficiary suffers loss in reliance on an erroneous decision (*id.* § 503(b)).

31.     To fulfill his or her statutory duties, the Secretary has a number of statutory powers. The Secretary can promulgate rules (*id.* § 501); reorganize the Department's functions (*id.* § 510); decide all questions of law and fact related to benefits determinations (*id.* § 511); delegate functions to his or her subordinates (*id.* § 512); and settle tort claims against the Department (*id.* § 515). The Secretary may also "enter into contracts or agreements with private or public agencies or persons" for "necessary services … as the Secretary may consider practicable." *Id.* § 513; *see also id.* §§ 1703 (authorizing the Secretary to enter into contracts for "hospital care and medical services"); 8102 (authorizing the Secretary to acquire medical facilities).

32.     As part of his or her duties with regard to ensuring the provision of health care services to veterans, the Secretary has specific statutory obligations to staff the Office of the Under Secretary for Health.

33.     The Under Secretary for Health is "the head of, and is directly responsible to the Secretary for the operation of, the Veterans Health Administration." *Id.* § 305(b). He or she is charged with numerous responsibilities for administering the VHA, including decisionmaking on what types of medical services to outsource from the VHA. *See*, *e.g*., 38 C.F.R. §§ 17.52, 17.142. As such, the Under Secretary for Health directs the administration of the entire VHA and, together with the Secretary, is ultimately responsible for the treatment and care of all veterans like Plaintiffs who receive medical care from the VA.

34.     The Under Secretary for Health's qualifications are set forth by statute: he or she "shall be appointed without regard to political affiliation or activity and solely--

      **(A)** on the basis of demonstrated ability in the medical profession, in health-care administration and policy formulation, or in health-care fiscal management; and
      **(B)** on the basis of substantial experience in connection with the programs of the Veterans Health Administration or programs of similar content and scope.

38 U.S.C. § 305(a)(2).

    35.    The Secretary is responsible for establishing a commission to recommend individuals to the President for appointment to the Under Secretary for Health position. 38 U.S.C. § 305(c)(1). The membership of this commission must include veteran and medical provider representatives, among others. *Id.* § 305(c)(2). The commission must recommend at least three individuals for appointment, who the Secretary shall forward to the President with any comments he or she considers appropriate. *Id.* § 305(c)(3).

    36.    The Under Secretary for Health position has been vacant since October 7, 2017, and there is no current nomination for the position.[9] The VHA currently is run by an "Executive in Charge" with the authority to perform the functions and duties of the Under Secretary for Health.[10] The Executive in Charge cannot perform non-delegable duties of this position without being appointed as acting Under Secretary, or otherwise complying with succession requirements.

    37.    The Secretary is responsible for taking action to fill the Under Secretary for Health position.

    38.    The Secretary is also responsible for the appointment of numerous positions within the Department, including leadership positions in the Office for the Under Secretary for Health. *See* 38 U.S.C. § 7306(a), (c). These positions are required by statute to meet certain medical

---

[9]   *See, e.g.*, Nikki Wentling, *Chief of VA Health System Steps Down*, Stars & Stripes (Oct. 6, 2017), https://www.stripes.com/news/chief-of-va-health-system-steps-down-1.491395; Nominations, S. Comm. on Veterans' Affairs, https://www.veterans.senate.gov/nominations (last visited June 18, 2018).

[10]   *Carolyn Clancy, MD*, Dep't of Veterans Affairs, https://www.va.gov/directory/guide/manager.asp?pnum=30310 (last visited June 18, 2018).

qualifications, such as being a qualified doctor of medicine for the Deputy Under Secretary for Health position and a qualified doctor of medicine or of dental surgery or dental medicine for various Medical Director positions. *Id*. § 7306(a). Several of the appointments must be made upon recommendation of the Under Secretary for Health. *Id*. § 7306(c).

39.     Several of the leadership positions in the Office of the Under Secretary for Health are empty or staffed by individuals serving in an acting capacity. For example, the Assistant Deputy Under Secretary for Health for Organizational Integration position is vacant. Other key positions, such as the Deputy Under Secretary for Health for Community Care and the Deputy Under Secretary for Health for Policy and Services have acting officials, not permanent appointments.[11]

40.     The Secretary is responsible for taking action to fill these important positions with permanent appointees. 38 U.S.C. § 7306.

**The Secretary Is Responsible for Representing Veterans' Interests to Congress**

41.     The Secretary is also responsible for representing the interests of veterans to Congress, both through regular testimony and through written submissions.

42.     For example, since the start of this calendar year, the Secretary has testified in support of the Department's budget request[12] and on the progress of implementing 2017 VA Reform Legislation, including with respect to implementing electronic medical records.[13]

---

[11]  *Key   Staff,   Veterans   Health   Administration*,   Dep't   of   Veterans   Affairs, https://www.va.gov/directory/guide/keystaff.cfm?id=2001 (last visited June 18, 2018).

[12]  *Statement of the Hon. David J. Shulkin, MD*, S. Comm. on Veterans' Affairs (Mar. 21, 2018), https://www.veterans.senate.gov/imo/media/doc/VA%20Shulkin%20Testimony%2003.21.2018. pdf.

[13]  *Statement of the Hon. David J. Shulkin, MD*, S. Comm. on Veterans' Affairs (Jan. 17, 2018), https://www.veterans.senate.gov/imo/media/doc/Shulkin%20VA%20Testimony%2001.17.2018. pdf.

43.    The Secretary also has regular obligations to submit written reports to Congress.

44.    Among these responsibilities, the Secretary is responsible for reporting to Congress on the recommendations of numerous advisory committees related to veterans' concerns. These include six statutorily required advisory committees, as well as non-statutory advisory committees. Their topics include: Former Prisoners of War (38 U.S.C. § 541), Women Veterans (*id.* § 542), Prosthetics and Special-Disabilities Programs (*id* § 543), Minority Veterans (*id.* § 544), the Readjustment of Veterans (*id.* § 545), and Disability Compensation (*id.* § 546).

45.    In general, the authorizing statutes for these advisory committees require the Secretary to appoint the members of the committees; to, on a regular basis, consult with and seek advice of the committee with respect to the subject matter of the committee; and to submit periodic reports by the committees to Congress with any comments concerning the report that the Secretary considers appropriate.

46.    At least one such reporting period is imminent. The Advisory Committee on the Readjustment of Veterans' annual report was due to the Secretary by March 31. *See id.* § 545(c)(1). The Secretary has 90 days to transmit to the Committees on Veterans' Affairs of the Senate and House of Representatives a copy of the report, together with any comments and recommendations concerning the report that the Secretary considers appropriate. *See id.* § 545(c)(2).

47.    In the past this Advisory Committee has made specific recommendations on the administration of healthcare by VHA. Among these is a recommendation it has made over the course of multiple reports for VHA to implement strategies and policies to enhance coordination of care for individual veteran clients between Vet Center and VA medical center providers. The

Committee called for "clear and precise directives from VHA" leadership.[14] The Advisory Committee has also made recommendations related to veteran access to mental health care providers familiar with military culture and combat-theater experience and specific veteran suicide prevention efforts.[15] Similar recommendations should now be before the Acting Secretary to review, and report along with recommendations to Congress.

### The Administration's Plans to Dismantle the Veterans Health Administration, Privatize Veterans' Health Care, and Strip Veterans' Benefits

48.     As explained above, the Department is charged with ensuring that veterans receive stable, predictable, high-quality health care. However, President Trump and his administration have long supported the privatization of the VA—a decision that would threaten Plaintiffs and other veterans' health care and increase the cost of providing health care services.

49.     During his campaign, then-candidate Trump and other campaign officials advocated for policies that would direct veterans toward private health care providers rather than the VA. Trump's plan would have generally allowed "veterans to choose a doctor outside the VA system," who would be reimbursed by the VA.[16] In May 2016, one of his senior advisors gave comments that indicated that Trump "would likely push VA health care toward privatization and might move for it to become more of an insurance provider like Medicare rather than an integrated hospital system."[17] And in a July 2016 speech in Virginia Beach, Trump himself argued that

---

[14]  *Advisory Committee of the Readjustment of Veterans, Eighteenth Annual Report*, Dep't of Veterans Affairs (Feb. 2017), https://www.va.gov/ADVISORY/Reports/ReportReadjust Feb2017.pdf.

[15]  *Id.*

[16]  Quil Lawrence, *Is Donald Trump Proposing Privatizing the VA?*, NPR (July 13, 2016), https://www.npr.org/2016/07/13/485782407/is-trump-proposing-privatizing-the-va.

[17]  Ben Kesling, *Donald Trump Adviser Signals Plan to Change Veterans' Health Care*, Wall St. J. (May 12, 2016), https://www.wsj.com/articles/donald-trump-adviser-signals-plan-to-change-veterans-health-care-1463064129.

"[v]eterans should be guaranteed the right to choose their doctor and clinics, whether at a VA facility or at a private medical center," describing the VA as "corrupt and inefficient."[18]

50.    Since his election, President Trump has continued to support privatization. During the transition, Trump openly "consider[ed] changing the department to allow some veterans to bypass the VA health-care system completely and get care exclusively from private-sector hospitals and clinics"—a step "which many veterans groups argue is the first step toward privatization."[19] Toward the end of 2017, Trump proposed to eliminate eligibility requirements for the use of private health coverage, which would transfer a greater share of funding from the VA to private providers.[20] The administration has also suggested that it would consider merging parts of the VA with Tricare, the military's privately administered health care program for troops, families, and retirees.[21]

51.    "Groups like the Koch brothers-backed Concerned Veterans for America" ("CVA") have driven the privatization agenda by "pushing to loosen current restrictions on veterans receiving private-sector care."[22] CVA, which "stands virtually alone among veterans' groups in its commitment to vastly expanded private options for veterans," "seems to have the

---

[18]    *See, e.g.*, Nathaniel Weixel, *VA Privatization Fight Could Erupt in Confirmation Hearing*, The Hill (Apr. 11, 2018), http://thehill.com/policy/healthcare/382555-va-privatization-fight-could-erupt-in-confirmation-hearing.

[19]    Ben Kesling, *Donald Trump Considers Moving VA Toward Privatization*, Wall St. J. (Dec. 28, 2016), https://www.wsj.com/articles/trump-considering-moving-va-toward-privatization-1482974260.

[20]    Eric Katz, *Trump Administration's Plan to Expand Private Care for Vets Sparks Fight Over VA's Future*, Gov't Exec. (Oct. 17, 2017), https://www.govexec.com/management/2017/10/trump-administrations-plan-expand-private-care-vets-begins-fight-over-vas-future/141842/.

[21]    Leo Shane III, *White House Officials Looking Into Merging VA and Tricare Health Services*, Army Times (Nov. 17, 2017), https://www.armytimes.com/veterans/2017/11/17/white-house-officials-looking-into-merging-va-and-tricare-health-services/.

[22]    Weixel, *supra*.

Trump administration's ear."[23] Indeed, President Trump's most recent plan for the VA closely "resembled the CVA's priorities," with six proposals that "drew directly on CVA ideas."[24]

52.     CVA and other proponents of privatization have also pushed the administration to hire friendly voices for critical positions in the federal government. "Darin Selnick, a former senior advisor to the Koch-funded group," served "as the veterans affairs adviser for the White House's Domestic Policy Council."[25] Selnick was "pushed out of the [Department] last year after butting heads with Shulkin over privatization of veterans health services."[26] Just days before President Trump fired former Secretary Shulkin, however, Selnick returned to a post at the VA.[27] President Trump also considered Fox News host Pete Hegseth, the former executive director of CVA, as a potential replacement for Shulkin, as well as Rick Perry, the current Secretary of Energy, who has said that he "supports moving more veterans' care to the private sector."[28] And President Trump

---

[23]   Josh Keefe, *Is the VA Being Privatized? This Koch-Backed Group Says It Just Wants "Choice" but Veterans Aren't So Sure*, Newsweek (Apr. 5, 2018), http://www.newsweek.com/koch-brothers-backed-group-could-determine-future-va-870693.

[24]   Isaac Arnsdorf, *Inside the Trump Administration's Internal War Over the VA*, Politico Mag. (Feb. 16, 2018), https://www.politico.com/magazine/story/2018/02/16/trump-veterans-affairs-va-david-shulkin-217013.

[25]   Nicholas Fandos & Dave Philipps, *In Battle Over Future of Veterans' Care, Moderation Wins, for Now*, N.Y. Times (Mar. 6, 2018), https://www.nytimes.com/2018/03/06/us/politics/veterans-affairs-shulkin-koch-brothers.html.

[26]   Lorraine Woellert, *Shulkin Critic Leaves White House to Return to VA*, Politico (Mar. 26, 2018), https://www.politico.com/story/2018/03/26/shulkin-va-white-house-486776.

[27]   *Id.*

[28]   Lisa Rein, *Trump Eyes 'Fox & Friends' Personality Pete Hegseth to Take Over Veterans Affairs*, Wash. Post (Mar. 15, 2018), https://www.washingtonpost.com/politics/trump-eyes-fox-and-friends-personality-pete-hegseth-to-take-over-veterans-affairs/2018/03/15/f8d03ef6-284e-11e8-b79d-f3d931db7f68_story.html; Kaitlan Collins et al., *Trump Eyes Rick Perry to Replace VA Secretary*, CNN (Mar. 18, 2018), https://www.cnn.com/2018/03/13/politics/rick-perry-david-shulkin-veterans-affairs/index.html.

has also leaned on Jeff Miller, a former member of Congress allied with CVA—and now a lobbyist—as his "point man on veterans policy."[29]

53.     Privatization would imperil Plaintiffs' and other veterans' essential health care. A 2016 study by RAND found that the "[q]uality of care delivered by VA is generally equal to or better than care delivered in the private sector."[30] Another 2016 RAND study, based on a meta-analysis of 69 articles, confirmed that "[s]tudies of safety and effectiveness indicated generally favorable performance by VA facilities compared to non-VA facilities."[31] That study confirmed a 2010 report from the Department itself, which reviewed 55 studies and concluded that "the available literature suggests that the care provided in the VA compares favorably to non-VA care systems, albeit with some caveats."[32]

54.     Moreover, the Department "has developed singular expertise on the medical needs of veterans,"[33] in subjects like severe trauma, rare diseases, amputations, burns, exposure to toxic substances like Agent Orange, physical therapy, anxiety, post-traumatic stress disorder, and other service-related ailments. "VHA's behavioral health programs, particularly with their integration of behavioral health and primary care, are largely unrivalled."[34] Because of its unique

---

[29]   Arnsdorf, *supra*.

[30]   Carrie M. Farmer et al., *Balancing Demand and Supply for Veterans' Health Care*, Rand Health Q. (June 20, 2016), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5158276/.

[31]   Claire O'Hanlon et al., *Comparing VA and Non-VA Quality of Care: A Systematic Review*, 32 J. Gen. Internal Med. 105, 118 (2016).

[32]   Health Servs. Research & Dev. Serv., *Comparison of Qualify of Care in VA and Non-VA Settings: A Systematic Review*, Dep't of Veterans Affairs, at vi (Sept. 2010), https://www.hsrd.research.va.gov/publications/esp/quality.pdf.

[33]   Daniel Marans, *Veterans Groups Worry VA Chief's Ouster Sets the Stage for Privatization*, HuffPost (Mar. 29, 2018), https://www.huffingtonpost.com/entry/veterans-group-worry-david-shulkin-ouster-va-privatization_us_5abd6b70e4b0a47437a9b663.

[34]   *Final Report*, Comm'n on Care 22 (June 30, 2016), https://s3.amazonaws.com/sitesusa/wp-content/uploads/sites/912/2016/07/Commission-on-Care_Final-Report_063016_FOR-WEB.pdf.

competencies, the VA "provides highly integrated treatment specific to the needs of veterans—care that is typically not available at any price to patients outside the VA system."[35]

55.     Privatization would be more expensive to boot. "Policymakers in both parties argue that offering veterans unrestricted choice between the public veterans health care system and private medical providers would be too expensive and lead to the dismantling of the Veterans Affairs system."[36] The nonpartisan Congressional Budget Office has found that "the structure of VHA and published studies suggest that VHA care has been cheaper than care provided by the private sector."[37] Services provided by the VA in the past "would have cost about 21 percent more if those services had been delivered through the private sector."[38] For these reasons, the Committee for a Responsible Federal Budget estimated that Trump's 2016 campaign "plan to reform the veterans affairs system and increase veterans' access to private doctors would cost about $500 billion" over the next ten years.[39]

56.     Most veterans oppose privatization. One survey found that "the vast majority of veterans (87%) believe the federal government should provide a health care system dedicated to the needs of ill, injured and wounded veterans," despite the VA's flaws.[40] Another found that

---

[35]   Phillip Longman & Suzanne Gordon, *VA Health Care: A System Worth Saving*, Am. Legion, https://www.legion.org/publications/238801/longman-gordon-report-va-healthcare-system-worth-saving (last visited June 18, 2018).

[36]   Fandos & Philipps, *supra.*

[37]   *Comparing the Costs of the Veterans' Health Care System with Private-Sector Costs*, Cong. Budget Office 1 (Dec. 2014), https://www.cbo.gov/sites/default/files/113th-congress-2013-2014/reports/49763-VA_Healthcare_Costs.pdf.

[38]   *Id.* at 5.

[39]   *Promises and Price Tags: A Fiscal Guide to the 2016 Election*, Comm. for a Responsible Fed. Budget 5 (2016), http://www.crfb.org/sites/default/files/CRFB_Promises_and_Price_Tags.pdf.

[40]   *The DAV Veterans Pulse Survey*, Disabled Am. Veterans (Nov. 11, 2015), https://www.dav.org/wp-content/uploads/DAV-Pulse-Report-Final.pdf.

veterans overwhelmingly reject the idea that "the VA health care system should be dismantled by creating a subsidy-based private health insurance for veterans, shutdown completely and outsourced to the private sector, or limited to only serving service-connected conditions."[41]

### The President Fires Secretary Shulkin

57.    On February 14, 2017, the Senate confirmed Dr. David J. Shulkin to serve as Secretary of Veterans Affairs by a 100 to 0 vote—the only cabinet secretary in this administration to be confirmed unanimously.[42]

58.    During his tenure, former Secretary Shulkin promised to prevent privatization of VA health services, noting in one statement that: "Many of VA's services cannot be replicated in the private sector. In addition to providing some of the best quality overall health care in the country, VA delivers world class services in polytrauma, spinal cord injury and rehabilitation, prosthetics and orthotics, traumatic brain injury, post-traumatic stress treatments and other behavioral health programs."[43]

59.    Just over a year after his confirmation, on March 28, 2018, President Trump fired former Secretary Shulkin.[44]

---

[41]  *Our Care 2017: A Report Evaluating Veterans Health Care*, Veterans of Foreign Wars (Mar. 2017),       https://www.vfw.org/-/media/vfwsite/files/advocacy/vfw-our-care-2017--executive-summary.pdf?la=en.

[42]  Wilson Andrews, *How Each Senator Voted on Trump's Cabinet and Administration Nominees*, N.Y.    Times,    https://www.nytimes.com/interactive/2017/01/31/us/politics/trump-cabinet-confirmation-votes.html?_r=0&mtrref=en.wikipedia.org (last updated May 11, 2017).

[43]  David Shulkin, *Veterans Affairs Secretary - VA Health Care Will Not Be Privatized on Our Watch*, USA Today (July 24, 2017) https://www.usatoday.com/story/opinion/2017/07/24/veterans-health-care-will-not-be-privatized-david-shulkin-column/499417001/.

[44]  *See, e.g.*, Nicholas Fandos & Maggie Haberman, *Veterans Affairs Secretary Is Latest to Go as Trump Shakes Up Cabinet*, N.Y. Times (Mar. 28, 2018), https://www.nytimes.com/2018/03/28/us/politics/david-shulkin-veterans-affairs-trump.html; Amanda Macias, *David Shulkin, Fired By Trump, Warns that Privatizing the Veterans Affairs Department Will Hurt Veterans*, CNBC (Mar. 29, 2018), https://www.cnbc.com/2018/03/29/david-shulkin-fired-by-

60.     That morning, former Secretary Shulkin spoke to the President, who "made no mention of the fact that he was about terminate [him]."[45] Several hours later, however, the President's Chief of Staff, John Kelly, called Shulkin to inform him that the President intended to fire him.[46]

61.     President Trump then "announced Shulkin's ouster in a tweet."[47] Specifically, President Trump tweeted that he intended to nominate Dr. Ronny L. Jackson as the new Secretary of Veterans Affairs, but was "thankful for Dr. David Shulkin's service to our country and to our GREAT VETERANS!"[48] When asked "if he was essentially fired via the tweet from the president, Shulkin responded: 'Yes.'"[49]

62.     Notwithstanding these public reports, the administration soon began to insist that former Secretary Shulkin had resigned. On March 31, Spokeswoman Lindsey Walters explained that "Secretary Shulkin resigned from his position as Secretary of the Department of Veterans

---

trump-warns-against-privatizing-the-va.html; Hope Yen & Zeke Miller, *Trump Fires Veterans Affairs Secretary Shulkin*, Time (Mar. 28, 2018), http://time.com/5219737/trump-fires-veterans-affairs-secretary-david-shulkin-admiral-ronny-jackson/.

[45]   Rebecca Morin, *Shulkin: Trump Didn't Mention Firing in Call Hours Before He Was Fired*, Politico (Mar. 29, 2018), https://www.politico.com/story/2018/03/29/trump-shulkin-firing-tweet-call-492412.

[46]   *Id.*

[47]   Todd Shields, *Trump's Outgoing Veterans Affairs Secretary Blasts 'Toxic' Washington*, Bloomberg (Mar. 29, 2018), https://www.bloomberg.com/news/articles/2018-03-28/trump-ousts-shulkin-as-veterans-affairs-chief-in-latest-shakeup.

[48]   Donald J. Trump (@realDonaldTrump), Twitter (Mar. 28, 2017, 2:31 PM), https://twitter.com/realDonaldTrump/status/979108653377703936 [hereinafter "Trump Tweet"].

[49]   Meagan Vazquez, *Shulkin Says He Was Fired Via Trump Tweet*, CNN (Apr. 2, 2018), https://edition.cnn.com/2018/04/02/politics/shulkin-tweet-fired-cnntv/index.html.

Affairs."[50] This assertion has been "strongly disputed" by "a person familiar with Shulkin's dismissal … [who] not[ed] that he did not submit a resignation letter."[51]

63.     By April 2, the administration changed its explanation again. White House communications aide Mercedes Schlapp stated that Kelly "called Shulkin and gave him the opportunity to resign."[52] When pressed on whether that meant Shulkin had been fired, Schlapp clarified that "General Kelly offered him the opportunity to resign. At this point, the president said it was time to move on in terms of Veterans Affairs. He thanks Secretary Shulkin for his service."[53]

64.     Former Secretary Shulkin's dismissal was preceded by months of plotting by administration officials, motivated by disagreements about "how far and how fast to privatize health care for veterans, a long-sought goal for conservatives like the Koch brothers."[54] "[T]he president's appointees have felt betrayed by what they see as backtracking at the department on access to privately provided health care," and in December "quietly bypassed the secretary to advance legislation that would open the way for more privately provided health care for

---

[50]   Andrew Restuccia, *Did Shulkin Get Fired or Resign? This Is Why It Matters*, Politico (Mar. 31, 2018), https://www.politico.com/story/2018/03/31/did-shulkin-get-fired-or-resign-veterans-492877.

[51]   *Id.*

[52]   Juana Summers, *Shulkin Says He Was Fired. The White House Said He Resigned. Here's Why It Matters*, CNN (Apr. 2, 2018), https://www.cnn.com/2018/04/02/politics/shulkin-trump-resigned-fired/index.html.

[53]   Andrew Restuccia, *White House Appears to Shift Explanation on Whether Shulkin Resigned or Was Fired*, Politico (Apr. 2, 2018), https://www.politico.com/story/2018/04/02/shulkin-resign-or-fire-495074.

[54]   Fandos & Haberman, *supra*.

veterans."[55] In other words, "[t]he fight over the leadership of the department is part of a long-running battle over how to deliver health care to the nation's veterans."[56]

65.    In an editorial published the day he was fired, former Secretary Shulkin attributed his dismissal to "advocates within the administration for privatizing V.A. health services," who "saw [him] as an obstacle to privatization who had to be removed."[57] Specifically, Shulkin believed that "privatization is a political issue aimed at rewarding select people and companies with profits, even if it undermines care for veterans."[58] In Shulkin's view, "[t]he private sector, already struggling to provide adequate access to care in many communities, is ill-prepared to handle the number and complexity of patients that would come from closing or downsizing V.A. hospitals and clinic."[59]

66.    President Trump himself even admitted that he fired Shulkin to accelerate the privatization of the VA, claiming in a speech on March 30 that "[w]e made changes because we

---

[55]    Dave Philipps & Nicholas Fandos, *Intrigue at V.A. as Secretary Says He Is Being Forced Out*, N.Y. Times, Feb. 15, 2018, https://www.nytimes.com/2018/02/15/us/veterans-affairs-david-shulkin.html.

[56]    *Id.*

[57]    David J. Shulkin, *Privatizing the V.A. Will Hurt Veterans*, N.Y. Times, Mar. 28, 2018, https://www.nytimes.com/2018/03/28/opinion/shulkin-veterans-affairs-privatization.html.

[58]    *Id.*

[59]    *Id.* Former Secretary Shulkin repeated his account in an interview with NPR, asserting that "political forces in the Trump administration want to privatize the VA – and that he was standing in the way." Laurel Wamsley & Scott Neuman, *Fired VA Secretary Says White House Muzzled Him*, NPR (Mar. 29, 2018), https://www.npr.org/sections/thetwo-way/2018/03/29/597866101/fired-va-secretary-says-white-house-muzzled-him. According to Shulkin, "[t]here are many political appointees in the VA that believe that we are moving in the wrong direction or weren't moving fast enough toward privatizing the VA." *Id.* And he told MSNBC that "[t]here was clear evidence … that the political appointees inside the VA were working against me and my leadership team because they felt that we were trying to strengthen the VA rather than moving towards privatization." Phil Helsel, *Fired VA Head Shulkin Says Political Appointees Were Focused on Privatization*, NBC News (Mar. 29, 2018), https://www.nbcnews.com/politics/politics-news/fired-va-head-shulkin-says-political-appointees-were-focused-privatization-n861351.

want them taken care of, we want them to have choice so that they can run to a private doctor and take care of it, and it's going to get done."[60]

67.     More recently, "[i]n a private meeting … with major veterans groups," Chief of Staff Kelly, who delivered the news to former Secretary Shulkin that he had been fired, "repeatedly said that the decision to remove Shulkin was President Donald Trump's," thereby "contradict[ing] the White House's claims about David Shulkin's departure."[61]

68.     In nominating Shulkin's proposed replacement, Dr. Ronny Jackson, the White House did not say that Shulkin resigned—as the White House typically does when nominating a new official to replace an official who resigned.[62] Dr. Jackson's nomination to serve as Secretary of Veterans Affairs has since been withdrawn.[63]

**The President Unlawfully Bypasses the Order of Succession**

69.     Federal law presumptively mandates that "the Deputy Secretary shall be Acting Secretary of Veterans Affairs … in the event of a vacancy in the office of Secretary." 38 U.S.C. § 304. Thus, when Secretary Shulkin was fired, then-Deputy Secretary Thomas Bowman became

---

[60]   Donovan Slack, *Donald Trump Says David Shulkin Out of Sync with Agenda on Private Sector Veterans Care*, USA Today (Mar. 29, 2018), https://www.usatoday.com/story/news /politics/onpolitics/2018/03/29/donald-trump-firing-va-secretary-says-he-fired-david-shulkin-give-veterans-choice-private-sector-car/470598002/.

[61]   Isaac Arnsdorf, *White House Chief of Staff Contradicts White House Claim on VA Shakeup*, ProPublica (Apr. 16, 2018), https://www.propublica.org/article/david-shulkin-white-house-chief-of-staff-contradicts-white-house-claim-on-va-shakeup.

[62]   *One Nomination Sent to the Senate Today*, White House (Apr. 16, 2018), https://www.whitehouse.gov/presidential-actions/one-nomination-sent-senate-today-5/.

[63]   Cristiano Lima, *Ronny Jackson Withdraws as Veterans Affairs Secretary Nominee*, Politico (Apr. 26, 2018), https://www.politico.com/story/2018/04/26/ronny-jackson-withdraws-as-veterans-affairs-secretary-nominee-555110.

the lawful acting Secretary. Before his appointment as Deputy Secretary, Bowman had a lengthy career in VA leadership positions and other policy roles related to veterans' affairs.[64]

70.     Bypassing the legal succession requirements, President Trump instead appointed Robert Wilkie—the Under Secretary of Defense for Personnel and Readiness—to serve as acting Secretary of Veterans Affairs (again by tweet).[65] Wilkie purported to serve as acting Secretary, and the Department recognized him as the Secretary.

71.     The President appears to have bypassed Deputy Secretary Bowman due to Bowman's opposition to privatization of VA health services. In an email sent in December 2017, the President's senior advisor on veterans affairs, Jake Leinenkugel, proposed that the administration replace Bowman with himself, and former Secretary Shulkin with a "strong political candidate," as retaliation for their positions on privatization.[66] Leinenkugel described Bowman as an "obstructionist[]" opposed to the administration's privatization agenda.[67]

72.     Then, in February 2018, the Washington Post reported that the administration again sought to fire Deputy Secretary Bowman, who "was said to be at odds with the administration's plan to expand health care access for veterans through private producers," as a "warning shot" to

---

[64]   *See Thomas G. Bowman*, *Deputy Secretary of Veterans Affairs*, Dep't of Veterans Affairs, https://www.va.gov/opa/bios/docs/bowman.pdf (last visited June 18, 2018).

[65]   *See* Trump Tweet, *supra*.

[66]   *See* Fandos & Philipps, *supra*.

[67]   Lisa Rein et al., *VA Chief Fights for His Political Future Amid Internal Strife and Allegations of Subterfuge*, Wash. Post (Feb. 15, 2018), https://www.washingtonpost.com/politics/va-chief-fights-for-his-political-future-amid-internal-strife-and-allegations-of-subterfuge/2018/02/15/e0c5ca2e-1278-11e8-9570-29c9830535e5_story.html.

former Secretary Shulkin.[68] "Bowman had pushed back on broad privatization efforts, leading Trump to berate him in an Oval Office meeting for his lack of loyalty."[69]

73.     President Trump has since announced that he intends to nominate Wilkie to serve as the Secretary of Veterans Affairs, prompting Wilkie to resign from his position as acting Secretary,[70] although Wilkie's nomination has not yet been formally submitted to the Senate. On May 30, after Wilkie resigned as acting Secretary, the President selected Defendant O'Rourke, the Chief of Staff of Veterans Affairs, to serve as acting Secretary.[71] O'Rourke now purports to serve as acting Secretary, and the Department recognizes him as the Secretary.[72]

74.     Bowman resigned as Deputy Secretary on June 15, 2018.[73] The VA's organic statute does not specify who must become the Secretary when the Deputy Secretary position is vacant. However, under Executive Order 13,736, the Under Secretary for Benefits, Paul R. Lawrence, would become the acting Secretary of Veterans Affairs. *Providing an Order of Succession Within the Department of Veterans Affairs*, Exec. Order 13,736 (Aug. 16, 2016). In

---

[68]   Emily Wax-Thibodeaux et al., *White House Targets VA's Deputy Secretary As 'A Warning Shot' to Agency's Leader*, Wash. Post (Feb. 8, 2018), https://www.washingtonpost.com /amphtml/world/national-security/white-house-targets-vas-deputy-secretary-as-a-warning-shot-to-agencys-leader/2018/02/08/cc052006-0d11-11e8-95a5-c396801049ef_story.html.

[69]   Woellert et al., *Trump's VA Pick Blindsides Staff, Deepens Agency Disarray*, Politico (Mar. 29, 2018), https://www.politico.com/story/2018/03/29/trumps-veterans-pick-agency-451219; *see also* Fandos & Haberman, *supra* ("The officials … came to consider Dr. Shulkin and his top deputy as obstacles.").

[70]   Richard Sisk, *Wilkie Steps Down As Acting VA Head While Awaiting Senate Confirmation*, Military.com (May 30, 2018), https://www.military.com/daily-news/2018/05/30/wilkie-steps-down-acting-va-head-while-awaiting-senate-confirmation.html; *see also* 5 U.S.C. § 3345(b)(1).

[71]   *VA Announces New Acting Secretary, Retirement of Deputy Secretary*, Dep't of Veterans Affairs (May 30, 2018), https://www.va.gov/opa/pressrel/pressrelease.cfm?id=4062.

[72]   *Acting Secretary of Veterans Affairs*, Dep't of Veterans Affairs, https://www.va.gov/opa/bios/secva.asp (last visited June 18, 2018).

[73]   *VA Announces New Acting Secretary, Retirement of Deputy Secretary*, *supra*.

any event, the President lacks authority to select another official, such as Defendant O'Rourke, to serve as acting Secretary.

## Wilkie and O'Rourke Take Control of the Department

75.    To date, Wilkie and Defendant O'Rourke have taken action in reliance on their purported authority as acting Secretary.

76.    As of June 18, 2018, the Department had issued nine final rules, ten proposed rules, and seventy-one notices in the few months since Wilkie and O'Rourke took office, and apparently in reliance on their authority as acting Secretary. The nine final rules include rules expanding access to non-VA care through the Veterans Choice program, authorizing health care providers to practice telehealth, amending the rating schedule that addresses gynecological conditions and disorders of the breast, amending the rating schedule that addresses eye disabilities, and amending acquisition regulations—rules that affect how and whether veterans will receive necessary health care—as well as a rule that affects which veterans are eligible for Supplemental Service-Disabled Veterans' Insurance.[74] Three additional rules are currently pending review at the Office of Information and Regulatory Affairs.[75] The Department has also issued guidance regarding staffing, pay administration, histopathology technicians, licensed professional mental health counselors, Congressional relations, and health care resources contracting.[76]

---

[74] *Veterans Affairs Department*, Fed. Register, https://www.federalregister.gov/agencies /veterans-affairs-department (last visited June 18, 2018)

[75] *List of Regulatory Actions Currently Under Review*, Office of Info. & Regulatory Affairs, https://www.reginfo.gov/public/jsp/EO/eoDashboard.jsp (last visited June 18, 2018).

[76] *VA Publications*, Dep't of Veterans Affairs, https://www.va.gov/vapubs/Search_action.cfm ?formno=&tkey=&dType=0&SortBy=issue&sort=desc&oid=0 (last visited June 18, 2018).

77.     Similarly, as of June 18, 2018, the Department had approved 524 contracts since Wilkie took office.[77] At the same time, the dubious legality of Wilkie's and O'Rourke's respective appointments has called the Department's authority to enter contracts into question, including a recent contract regarding the Department's medical records system.[78] That contract was announced by Wilkie on May 18.[79]

78.     Because Wilkie and O'Rourke were not authorized to enter into these contracts, the availability of the services and materials provided pursuant to them could be jeopardized at any time. Moreover, the Department could be subjected to conflicting and overlapping obligations, draining the Department's resources and reducing its ability to provide care to Plaintiffs and other veterans. This problem will only increase with time, as O'Rourke takes or approves more and more actions that are subject to invalidation. As a result, Plaintiffs' and other veterans' health care is and will continue to be in imminent danger.

79.     Wilkie used his platform as acting Secretary to advocate on behalf of reforms that would push the VA toward privatization. On April 9, purporting to speak for "America's veterans," he issued a statement urging Congress to pass a bill expanding the VA Choice program, which

---

[77]   *Opportunities*, Fed. Bus. Opportunities, https://www.fbo.gov/index? (advanced search with "Department of Veterans Affairs" as the agency and a contract award date between March 28 and June 18, 2018) (last visited June 18, 2018).

[78]   Leo Shane III, *Ambitious VA Medical Records Overhaul in Jeopardy After Department Shakeup*, Army Times (Apr. 19, 2018), https://www.armytimes.com/veterans/2018/04/19/ambitious-va-medical-records-overhaul-in-jeopardy-after-department-shakeup/.

[79]   Jessica Davis, *VA Officially Signs with Cerner on EHR Modernization Project*, Healthcare IT News (May 18, 2018), http://www.healthcareitnews.com/news/va-officially-signs-cerner-ehr-modernization-project.

"allow[s] Veterans to seek care in the private sector."[80] Similarly, O'Rourke has advocated for letting veterans "choose a local provider if that's a better option for them."[81]

80.     Senior staffers (including former Deputy Secretary Bowman) have also left the Department, or have been reassigned within the Department, since Wilkie and O'Rourke took office. For example, Scott Blackburn, the acting Executive in Charge for the Office of Information and Technology, left the Department on April 17.[82]

81.     In a statement, VA Press Secretary Curt Cashour described the departed officials as "employees who were wedded to the status quo and not on board with this administration's policies or pace of change."[83] According to Cashour, the VA's leadership "is now firmly aligned with President Trump and his priorities," "speaking with one voice to Veterans, employees and outside stakeholders, such as Congress and veterans service organizations," and "working closely with the White House to implement the president's priorities for VA."[84] Those priorities include "work[ing] with Congress to get community care reform legislation passed" that would increase access to private health care providers, as well as "finaliz[ing] a decision on the department's electronic health record (EHR) modernization."[85]

---

[80]   *Statement by Acting VA Secretary Robert Wilkie – Congress Must Pass Choice Bill Now to Give Best Care Options to Our Veterans*, Dep't of Veterans Affairs (Apr. 9, 2018), https://www.va.gov/opa/pressrel/pressrelease.cfm?id=4036.

[81]   Julie Grant, *Acting VA Secretary: 'This President Has Made a Promise to Veterans,'* CBS Pittsburgh (June 7, 2018), http://pittsburgh.cbslocal.com/2018/06/07/peter-orourke-veterans-accountability-whistleblower-act/.

[82]   Jessie Bur, *Veterans Affairs CIO Scott Blackburn Resigns*, Fed. Times (Apr. 18, 2018), https://www.federaltimes.com/management/leadership/2018/04/17/veterans-affairs-cio-scott-blackburn-resigns/.

[83]   *Statement by VA Press Secretary Curt Cashour on VA's Near-Term Priorities Under Acting Secretary Robert Wilkie*, Dep't of Veterans Affairs (Apr. 25, 2018), https://www.va.gov/opa/pressrel/pressrelease.cfm?id=4043.

[84]   *Id.*

[85]   *Id.*

82.     Until Wilkie is confirmed by the Senate, O'Rourke will likely continue to serve as acting Secretary.

### First Claim

**Wilkie's and O'Rourke's Appointments Violate the Federal Vacancies Reform Act,
5 U.S.C. § 3345 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 706**

83.     Plaintiffs incorporate the foregoing paragraphs as if set forth fully herein.

84.     Under the Federal Vacancies Reform Act of 1998, the President "may direct a person who serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate, to perform the functions and duties of the vacant office temporarily in an acting capacity." 5 U.S.C. § 3345(a).

85.     However, the President's power under the Act is limited; he may do so only if the previous officeholder "dies, resigns, or is otherwise unable to perform the functions and duties of the office." *Id.* The statute does not permit the President to fill the vacancy if the previous officeholder is removed from office or merely because the office is vacant, regardless of the reason for the vacancy.

86.     Former Secretary Shulkin did not "die" or "resign." Nor was he "unable to perform the functions and duties of the office." He was ready and willing to continue serving as Secretary of Veterans Affairs. Instead, he was fired by the President. The President therefore lacked the power to appoint Wilkie or O'Rourke as acting Secretary.

87.     Congress passed the FVRA to eliminate the "threat to the Senate's advice and consent power" posed by permitting the President to appoint acting officials at will. *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 936 (2017). The President's appointment of Wilkie and O'Rourke in violation of the terms of the FVRA circumvents Congress's power over the appointment process entirely.

88.     Because Wilkie was not, and O'Rourke is not, the lawful acting Secretary, any action that either official took or takes in the future "shall have no force or effect," and "may not be ratified" by a subsequent Secretary. 5 U.S.C. § 3348(d).

89.     The President's appointment of O'Rourke to serve as acting Secretary, O'Rourke's continued representation that he is the acting Secretary of Veterans Affairs, the Department's recognition that he currently serves in that office, and any actions taken by Wilkie or O'Rourke pursuant to their purported authority as acting Secretary are therefore unlawful, violating the FVRA, 5 U.S.C. § 3345 *et seq.*, the Department's order of succession statute, 38 U.S.C. § 304, and the Administrative Procedure Act, 5 U.S.C. § 706.

## Second Claim

### Wilkie's and O'Rourke's Appointments Violate the Appointments Clause of the Constitution, art. II, § 2, cl. 2

90.     Plaintiffs incorporate the foregoing paragraphs as if set forth fully herein.

91.     The Appointments Clause mandates that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consules, Judges of the Supreme Court, and all other Officers of the United States." U.S. Const. art. II, § 2, cl. 2.

92.     Specifically, the Secretary of Veterans Affairs "is the head of the Department" of Veterans Affairs "and is appointed by the President, by and with the advice and consent of the Senate." 38 U.S.C. § 303.

93.     By directing Wilkie, and then O'Rourke, to serve as the acting Secretary of Veterans Affairs, the President appointed them to that office within the meaning of the Appointments Clause and Section 303 of Title 38 of the U.S. Code.

94.     However, neither O'Rourke nor Wilkie were nominated by the President nor confirmed by the Senate to serve in that position. Nor did the President lawfully appoint them to that office in an acting capacity under the terms of the FVRA, in derogation of the process established by Congress to protect its authority under the Appointments Clause. Wilkie's and O'Rourke's appointments as acting Secretary therefore violate the Appointments Clause.

95.     The President's appointment of O'Rourke to serve as acting Secretary, O'Rourke's continued representation that he is the acting Secretary, the Department's recognition that he currently serves in that office, and any actions taken by Wilkie or O'Rourke pursuant to their purported authority as acting Secretary violate the Appointments Clause and are therefore void.

### Third Claim

### Plaintiffs Are Entitled to a Declaratory Judgment Under 28 U.S.C. § 2201

96.     Plaintiffs incorporate the foregoing paragraphs as if set forth fully herein.

97.     Under Section 2201 of Title 28 of the United States Code, "[i]n a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."

98.     There is an actual controversy between Plaintiffs and Defendants regarding Wilkie's and O'Rourke's purported authority as acting Secretary of Veterans Affairs. Their unlawful appointments call into question the lawfulness of any actions they have taken or that O'Rourke will take while purporting to serve as acting Secretary, and thereby creates profound uncertainty over the standards and procedures by which veterans, including Plaintiffs, will receive the benefits to which they are entitled under federal law.

99.     Any cutbacks in or additional requirements for obtaining veterans' benefits are presumed unlawful and subject to challenge if enacted under O'Rourke's leadership. In particular,

any actions the Department might take under O'Rourke's authority to privatize veterans' health care, including new rules and agency guidance, contracts with third party service providers, and changes to the procedures and manuals that govern veterans' receipt of health care, would be unlawful.

100.    However, many of these changes may well take place without formal rulemaking or other public process which allow Plaintiffs and other veterans to voice their concerns and challenge unlawful action—or even to learn that such action has taken place. O'Rourke's assertion of authority to act in these innumerable ways subjects Plaintiffs to an ongoing risk of imminent harm, as their health care and other benefits could be altered at any time and without other remedy.

101.    Conversely, any benefits that Plaintiffs and other veterans might receive while O'Rourke purports to serve as acting Secretary, especially any benefits received or anticipated as a consequence of O'Rourke's actions and policies, could be subject to challenge and recoupment by the Department or third parties if O'Rourke's tenure is later found to be unlawful. *See* 38 U.S.C. § 5316.[86] Instead of receiving, free and clear, the benefits statutorily owed to them by the Department, Plaintiffs' benefits are subject to a cloud of uncertainty that decreases their value and harms Plaintiffs.

102.    A declaration as to the lawful leadership of the VA is essential to resolve the uncertainty and confusion that currently surrounds the relationship between veterans and the Department.

---

[86]    *Cf.* James Clark, *The VA Takes Back Millions in Benefits from Disabled Vets and Can't Explain Why*, Task & Purpose (May 11, 2017), https://taskandpurpose.com/va-congress-separation-disability-pay-recoupment/ (discussing recoupment of separation pay before payment of disability benefits).

**Prayer for Relief**

WHEREFORE, Plaintiffs respectfully request that the Court:

1.      declare that O'Rourke's and Wilkie's appointments as acting Secretary of Veterans Affairs were unlawful and that any actions taken in reliance on O'Rourke's or Wilkie's purported authority are unlawful and void;

2.      enjoin O'Rourke from continuing to represent that he is the acting Secretary of Veterans Affairs, the Department from recognizing that he currently serves in that office, and both O'Rourke and the Department from taking any action in reliance on O'Rourke's purported authority as acting Secretary of Veterans Affairs;

3.      award Plaintiffs their attorneys' fees, costs, and other disbursements in this action; and

4.      grant Plaintiffs such other relief as the Court deems just and proper.

Dated: June 20, 2018                           Respectfully submitted,

*/s/ John T. Lewis*

Javier M. Guzman (D.C. Bar No. 462679)
Robin F. Thurston (D.C. Bar No. 1531399)
Jeffrey B. Dubner (D.C. Bar. No. 1013399)
John T. Lewis (D.C. Bar No. 1033826)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
jguzman@democracyforward.org
rthurston@democracyforward.org
jdubner@democracyforward.org
jlewis@democracyforward.org

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2018, I electronically filed a copy of the foregoing.

Notice of this filing will be sent via email to all parties by operation of the Court's electronic

filing system. Parties may access this filing through the Court's CM-ECF system.

/s/ *John T. Lewis*
John T. Lewis